STATE *ex rel.* WEST VIRGINIA TRUCK STOPS, INC.,

*a corporation*

*v.*

T. MCHUGH, *Judge, etc., et al.*

(No. 13770)

Decided April 5, 1977.

*Lewis, Ciccarello, Masinter & Friedberg, Martin J. Glasser,* for relator.

*Kay, Casto & Chaney, Michael T. Chaney and John S. Haight,* for respondents.

CAPLAN, CHIEF JUSTICE:

In this proceeding in prohibition the relator, West Virginia Truck Stops, Inc., invokes the original jurisdiction of this Court, seeking to prohibit the respondents, Thomas McHugh, Judge of the Circuit Court of Kanawha County and others, from proceeding with the prosecution of an action instituted in that court by respondent Paul E. Grimm, d/b/a Grimm Construction Company, against the relator. When the trial court overruled Truck Stops' motion to discontinue the trial before a commissioner and to afford it a jury trial, Truck Stops instituted this proceeding in prohibition.

The controversy which resulted in this proceeding arose from a contract dated February 23, 1972, entered into between the relator, Truck Stops, and Paul E. Grimm, one of the respondents herein. Under the terms of that contract Grimm, a general contractor, agreed to construct for the relator a truck stop facility on certain property in Kanawha County, which the latter had leased. The contract specified what work was to be done, that it was to be performed in three separate phases and provided the cost of the construction to Truck Stops would not exceed $200,000.00. The relator has paid

Grimm $209,000.00 but Grimm refused to complete the job until an additional sum of $121,000.00 was paid by Truck Stops for additional work allegedly done.

On December 29, 1972, as a result of the refusal of Truck Stops to pay the additional sum, Grimm filed a mechanic's lien against the subject property. The action alluded to above was instituted by Grimm against the relator on February 13, 1973. In his complaint Grimm demanded judgment against Truck Stops in the sum of $121,638.95; enforcement of his mechanic's lien; and sale of the real property with the improvements thereon in satisfaction of various liens.

Truck Stops, on March 20, 1973, filed an answer to Grimm's complaint and also filed a counterclaim demanding judgment against Grimm in a substantial sum. In said answer and counterclaim Truck Stops demanded a trial by jury. As reflected by an order of the Circuit Court of Kanawha County, dated April 26, 1974, Truck Stops moved "that the issues of the existence and terms of the contract between the parties and other factual issues be submitted to a jury for determination." This motion was overruled and counsel for the defendant, Truck Stops, noted his objection and exception. Thereupon the trial court referred this matter to a commissioner for the purpose of taking evidence and reporting back to the court.

The hearings before the commissioner began on August 5, 1974 and continued from time to time until July 19, 1976, when the plaintiff rested. It is alleged in the answer of Grimm in this proceeding that after he rested on July 19, 1976, counsel for the relator requested of the commissioner that it be granted a continuance to allow it additional time in which to prepare its defense. The answer also asserts that Truck Stops did not at that time claim a right to a jury trial.

On July 27, 1976 the relator filed a motion in the Circuit Court of Kanawha County seeking dismissal of the action on the ground that it was being unconstitu-

tionally denied a trial by jury. Alternatively, that motion sought to suspend further proceedings before the commissioner until it be determined by a jury trial whether Truck Stops "owes monies to any of the other parties to this proceeding."

After the issues raised in the relator's motion to dismiss were briefed and argued before the court, by an order dated September 23, 1976 and entered by John N. Charnock, Jr., Special Judge, the motion was overruled. After noting in the order that Judge Taylor, trial judge at the commencement of the proceeding, had denied a motion for a jury trial on April 26, 1974, the order proceeded as follows: "to now grant the defendant's motion would destroy the regularity and continuity of the proceedings and ... to require these claimants to go to the additional time and expense of starting over again would result in a greater injustice than might result from denying the said motion." This proceeding in prohibition followed.

It is the position of the relator that it is entitled to a jury trial in the action below and particularly with regard to its counterclaim. For example, says the relator, the contract calls for the construction to be performed in three phases; yet, phases two and three have not been performed at all by Grimm. Further, it asserts, no plans and specifications were produced by the contractor, making it impossible to tell from the face of the contract precisely what Grimm was suppose to do for Truck Stops. Also, it is undisputed that Truck Stops has paid the $200,000.00 guaranteed cost under the contract to Grimm.

The counterclaim, says the relator, charges Grimm with a breach of contract, reflecting factual issues which give a right to trial by jury under Article III, Section 13 of the *West Virginia Constitution*. It is further asserted by the relator that it was compulsory under the provisions of Rule 13, R.C.P., for it to have filed its counterclaim when it filed its answer. In addition, the relator says that although a mechanic's lien suit is statutory

and that it may not, therefore, be entitled to the common law right to a jury trial by reason of it being basically a proceeding in equity, the R.C.P. have merged law and equity and a trial by jury is required on demand. Finally, the relator asserts that if the mechanic's lien statute is construed to deprive the relator in the action below of a jury trial then such statute is unconstitutional; the procedural remedy—mechanic's lien—must yield to a constitutional right.

The respondents resist the granting of the writ of prohibition on the following grounds: (1) A mechanic's lien suit is historically an equitable proceeding and therefore no right to trial by jury exists; (2) The relator proceeded before the commissioner without objections and without again requesting a jury trial; (3) Petitioner having delayed institution of a proceeding in prohibition for approximately two and one-half years after the court denied an order requesting a jury trial is barred by waiver, estoppel and/or laches; and (4) The denial by the trial court of a jury trial was an appealable order.

In view of the matters raised in the relator's counterclaim and by reason of the provision of Article III, Section 13 of the West Virginia Constitution mandating that "the right of trial by jury, if required by either party, shall be preserved", the respondents do not seriously contend that the relator was not entitled to a jury trial on its counterclaim. They do contend, however, that by reason of the relator's delay in instituting an action requiring the court to afford it a jury trial, such action cannot now be maintained.

The trial court's ruling, in effect, acknowledged such right to a jury trial but said to permit one now would disrupt the proceedings and "result in a greater injustice than might result from denying the said motion." The only real issue is whether, as alleged by the respondents, the relator's failure to timely institute its action in prohibition, upon the denial of its motion (for a jury trial) on April 26, 1974, defeats its right to prohibition now.

In resolving the question presented here it is necessary to consider the circumstances in which such question arose. It is the tenor of the respondent's argument that the delay of which they now complain was attributable to the relator alone and that it should therefore be denied its requested relief. When the relator's motion for a jury trial was denied on April 26, 1974, the relator did all it could to protect itself at that time. It argued its position before the court and when it did not prevail it noted its objection and exception to the court's ruling.

Upon referral of the case to a commissioner the plaintiff, on August 5, 1974, began to present its evidence. The plaintiff consumed almost two years in that endeavor, resting on July 19, 1976. During that period of time the relator was under no legal obligation to act in any manner. Approximately one week later, on July 27, 1976, the relator, instead of proceeding with his case before the commissioner, once again filed a motion with the trial court seeking a jury trial. When this motion was denied on September 23, 1976, the relator, on October 5, 1976, filed this petition for a writ of prohibition.

In the circumstances described above it is our considered opinion that the contention of the respondents is without merit; nor are the reasons stated by the trial court in its order of September 23, 1976 sufficient to preclude consideration of the merits of the petition.

The relator did nothing to induce respondent Grimm to proceed with his case and to thereby expend time and money over a period of two years. The mere expiration of time is not the controlling factor is determining whether the petitioner proceeded in prohibition in a timely manner. There must be an intervening change of position of the respondent induced by the inaction of the petitioner. *Industrial Commission of Arizona v. The Superior Court*, 5 Ariz. App. 100, 423 P.2d 375 (1967). As noted, the relator was under no legal obligation to act and in no manner induced respondent Grimm in any change of position.

When the time came for the relator, then the defendant, to go forward with its case, it was not dilatory. It again sought to obtain a jury trial, a right to which it believed it was entitled. When this was denied, it proceeded forthwith in instituting its petition for a writ of prohibition.

We consider now the merits of the petition. If, by denying the relator a jury trial upon his demand therefor the trial court exceeded its legitimate powers, the relator is entitled to a writ of prohibition. *W. Va. Code*, 1931, 53-1-1.

The issues raised by the relator in its counterclaim—principally, whether the plaintiff breached the contract—are triable by a jury. Article III, Section 13 of the *Constitution of West Virginia*, in pertinent part, provides: "In suits at common law, where the value in controversy exceeds twenty dollars . . . the right of trial by jury, if required by either party, shall be preserved . . . ." A counterclaim is an offensive as well as a defensive plea. *Olsen v. McMaken & Pentzien*, 139 Neb. 506, 297 N.W. 830 (1941). It is a cause of action, seeking affirmative relief. *Lovett v. Lovett*, 93 Fla. 611, 112 So. 768 (1927); *Secor v. Siver*, 165 Iowa 673, 146 N.W. 845 (1914). Certainly, a counterclaim alleging a breach of contract and affirmatively seeking a judgment in the sum of $309,000.00 warrants a trial by jury, when demanded, under the above constitutional provision.

The contention of the relator that it was mandatory to pursue its claim by filing a counterclaim in response to Grimm's complaint is meritorious. Rule 13, R.C.P. says that "A pleading *shall* state as a counterclaim any claim which *at the time of serving the pleading* the pleader has against any opposing party . . . ." (emphasis supplied) Therefore, the counterclaim was necessarily pleaded by the relator and, as noted, raises issues triable by a jury upon demand.

It has been said by substantial authority that a contractor cannot successfully assert a mechanics's lien upon the property where there has been a default in the

performance of the contract. *See, Barlow v. Staples*, 28 Colo. App. 93, 470 P.2d 909 (1970); *Rozema v. Quinn*, 51 Ill. App. 2d 479, 201 N.E.2d 649 (1964); *North Iowa Steel Co. v. Staley*, 253 Iowa 355, 112 N.W. 2d 364 (1961); *Johnson v. Metcalfe*, 209 Md. 537, 121 A.2d 825 (1956); *K-V Builders, Inc. v. Thomas*, 353 S.W.2d 130 (Mo. 1962); *Saliba v. Lunsford*, 268 Ala. 307, 106 So.2d 176 (1958); *Easthampton Lumber & Coal Co. v. Worthington*, 186 N.Y. 407, 79 N.E. 323 (1906); and, 53 Am. Jur. 2d *Mechanics' Lien*, § 51.

In the instant case the relator, in the trial court, asserted by counterclaim that the plaintiff had only partially performed under the contract, thereby being guilty of a breach thereof. It is undisputed that the contract limited the relator's obligation to $200,000.00, whereas, in fact it had already paid Grimm the sum of $209,000.00. The relator alleged in its counterclaim that only one phase of a three phase contract had been performed by Grimm. These assertions create issues which must be resolved before the rights of Grimm under his mechanic's lien can be determined. In resolving the issues raised by the counterclaim the relator was entitled to a jury trial.

The significance of the failure or refusal to afford a jury trial in a proper case, when demanded, is succinctly demonstrated by the language in Point 2 of the syllabus in *Matheny v. Greider*, 115 W. Va. 763, 177 S.E. 769 (1934), which reads as follows: "When a trial by jury has been demanded in an action involving more than twenty dollars, the impaneling of a jury to try the issue is a jurisdictional requirement, and a judgment rendered without complying with it is void." In *Stephenson v. Ashburn*, 137 W. Va. 141, 70 S.E.2d 585 (1952), citing *Matheny v. Greider, supra*, the Court commented that such void judgment may be attacked at any time, directly or collaterally. It further said that the language of the constitution, relating to the right to trial by jury, is mandatory and "the right itself is fundamental." See also *Armstrong v. Jones*, 139 W. Va. 812, 81 S.E.2d 675 (1954).

*W. Va. Code* 53-1-1 provides that prohibition shall lie as a matter of right upon the usurpation and abuse of power by an inferior court when it does not have jurisdiction of the subject matter in controversy, "or, having such jurisdiction, exceeds its legitimate powers." Being couched in the disjunctive, prohibition shall lie as a matter of right, (1) if the court undertakes to act without jurisdiction; or, (2) if, by acting, it exceeds its legitimate powers. If the abuse falls within either (1) or (2) above, prohibition shall lie.

In *Lake O'Woods Club v. Wilhelm, Judge*, 126 W. Va. 447, 28 S.E.2d 915 (1944), the Court said in Point 1 of the syllabus, "Where it appears that the court in which a suit or action has been instituted has no jurisdiction to enter any decree or judgment therein, the writ of prohibition against further proceedings therein will issue, regardless of the existence of other remedies available to the party whose interests are affected thereby." In the instant case the trial court denied the relator a right to a trial by jury, to which, under *W. Va. Const.*, Art. III, § 13, it was clearly entitled. This constitutes, in our opinion, an abuse demonstrating that the court has exceeded its legitimate powers. That is a ground for prohibition equal to that wherein the court acts without jurisdiction over the subject matter in controversy. The trial court has denied a fundamental constitutional right, *Stephenson v. Ashburn, supra*, thereby exceeding its legitimate powers.

It is argued that prohibition may not be used as a substitute for writ of error or appeal and is not therefore available to the relator. While it is well settled that the writ of prohibition may not be used to perform the function of an appeal, but rather to prevent an unlawful assumption of jurisdiction, it is forcefully demonstrated in *Wolfe v. Shaw, Judge*, 113 W. Va. 735, 169 S.E. 325 (1933), that where it appears that a court is proceeding without jurisdiction (or is exceeding its legitimate powers), prohibition will issue regardless of the existence of other remedies. In *New Gauley Coal Corporation v. Herndon*, 101 W. Va. 445, 132 S.E. 879 (1926) the Court, in

answer to the argument made here, said: "The answer to this is that prohibition is a writ of right ... and petitioner may elect to pursue it rather than to proceed by some other method. It is a quick, inexpensive and adequate method of stopping litigation where there is no jurisdiction."

In the case before us the abuse is equal in stature to the lack of jurisdiction. Relevant here are the following remarks in *Wolfe v. Shaw, Judge, supra,* "But why permit the trial to go on? A trial as to Wolfe would be futile, because any judgment rendered against him would ultimately have to fall if challenged on a writ of error." This is reflective of the instant case.

For the reasons stated, the writ of prohibition is awarded.

*Writ awarded.*